SCHOOLMAN TRANSPORTATION
SYSTEM, INC., d/b/a Classic
Coach, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 96–1330.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 21, 1997.

Decided May 6, 1997.

Martin Gringer, Garden City, NY, argued the cause and filed the briefs, for petitioner.

David A. Seid, Attorney, National Labor Relations Board, Washington, DC, argued the cause for respondent, with whom Linda R. Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, were on the brief. Frederick L. Cornnell, Attorney, Washington, DC, entered an appearance.

Before EDWARDS, Chief Judge, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This case arises from a union representation election involving the employees of Schoolman Transportation System, Inc. ("Schoolman"). Several ballots were challenged during the election, putting into question the eligibility of certain employees to vote. After ruling on the challenges, the National Labor Relations Board ("Board") determined that Local 804 of the International Brotherhood of Teamsters ("Union") had won the election by a vote of 20 to 18. The Board certified the Union as the collective bargaining representative, but Schoolman refused to bargain. The Board then found that Schoolman's refusal to bargain constituted an unfair labor practice under sections 8(a)(1) and (5) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1), (5) (1994).

In this petition for review, Schoolman argues that the Board abused its discretion in resolving issues over eligibility to vote. We find no merit in Schoolman's arguments. The Board held that the Stipulated Election Agreement, which only included "full time and regular part time" employees, did not include "casual" employees. This finding was consistent with the Board's longstanding

policy of excluding "casual" employees unless specifically included. Finding casual employees ineligible to vote, the Board sustained the Union's challenge to the ballot cast by Roger Kai, a casual worker. Schoolman now claims that, because Kai was excluded, other employees who also may have been "casual" (but whose ballots were not challenged) should have been excluded. Schoolman's argument is specious: if the employer wanted to oppose the inclusion of casual employees, it was required to object before the ballots were counted. Schoolman found nothing objectionable to the belatedly disputed ballots until after discovering that it had lost the election.

Having determined that the Board did not abuse its discretion in excluding Kai, we need not address Schoolman's challenge to the status of Daniel Mullen, a dispatcher. The final vote was 20 to 18 in favor of the Union, so Mullen's status is immaterial because his vote could not have affected the outcome. We also reject Schoolman's argument that, because Mullen was excluded, all dispatchers should have been excluded; again, if Schoolman had wanted to object to these other employees, it was required to do so before the ballots were counted.

Accordingly, we deny Schoolman's petition for review and grant the Board's cross-application for enforcement.

## I. BACKGROUND

Schoolman operates a charter bus service in Bohemia, New York. Roger Kai worked only occasionally at Schoolman, logging a mere nine days in 1992. From mid-July 1992 through mid-February 1993, Kai did not work a single day at Schoolman. For most of this time, he worked at another job out of state.

On December 21, 1992, the Union filed a representation petition with the Board seeking certification as the collective bargaining representative. On January 11, 1993, the Union and Schoolman entered into a Stipulated Election Agreement, approved by the Board's Regional Director, stating that the unit included "[a]ll full time and regular part time bus drivers, mechanics, dispatchers and assistant dispatchers" and excluded "[a]ll office clerical employees, guards and supervisors as defined in the Act." *See* Stipulated Election Agreement, *reprinted in* Joint Appendix ("J.A.") 3.

On February 9 and 11, 1993, an election was held in which 19 employees voted in favor of union representation and 17 voted against. Four additional ballots were challenged, either by the Union or the Board Agent; Schoolman, however, did not challenge any ballots. Two of the challenged ballots were those of Roger Kai and Daniel Mullen: the Union challenged Kai's ballot on the ground that he was not a regular employee, and Mullen's ballot on the ground that he was a supervisor. The two other challenged ballots were eventually counted, with one vote for the Union and one vote against, bringing the vote totals to 20 to 18 in favor of union representation.

On June 10, 1993, the Board's Acting Regional Director recommended sustaining the Union's challenge to Kai's ballot:

[I]t has always been the Board's policy to exclude casual employees from the unit, absent a specific agreement to include them. The unit in the instant case was restricted to full time and regular part time bus drivers. I therefore recommend that the challenge to Roger Kai's ballot be sustained.

Report on Objections and Challenges at 12, *reprinted in* J.A. 19. He further recommended a hearing on, among other matters, the challenge to Mullen's ballot. The Board adopted the Acting Regional Director's findings and recommendations.

In February and March 1994, an administrative law judge ("ALJ") held a hearing on, *inter alia,* the challenge to Mullen's ballot. On May 15, 1995, the ALJ issued a decision. He recommended that the Board sustain the Union's challenge to Mullen's ballot because Mullen's interests were aligned with management and because he was a supervisor. On November 22, 1995, the Board issued a Decision, Order, and Direction adopting the ALJ's findings and recommendations. In affirming the ALJ's finding that Mullen was ineligible to vote, the Board concluded that Mullen's "interests are aligned with those of

management and that he does not share a community of interest with unit employees." *Schoolman Transp. Sys., Inc.*, 319 N.L.R.B. No. 96, at 1 n. 1, 1995 WL 696535 (1995), *reprinted in* J.A. 121 n.1. With Kai's and Mullen's ballots excluded, the final vote was 20 to 18 in favor of union representation.

On January 10, 1996, the Union was certified as the employees' bargaining agent. Schoolman, however, refused to bargain, and the Union filed an unfair labor practice charge. On March 22, 1996, the Regional Director, on behalf of the General Counsel, issued an unfair labor practice complaint alleging that Schoolman had violated sections 8(a)(1) and (5) of the National Labor Relations Act by its refusal to bargain. Thereafter, the General Counsel filed a motion for summary judgment and a motion to transfer the proceeding to the Board. On June 26, 1996, the Board transferred the proceeding to itself.

On August 16, 1996, the Board issued a Decision and Order granting the General Counsel's motion for summary judgment and finding that Schoolman's refusal to bargain violated sections 8(a)(1) and (5) of the Act. The Board's Order required Schoolman to cease and desist from the unfair labor practices and to bargain with the Union collectively on request.

## II. ANALYSIS

In this petition for review, Schoolman does not contest that it failed to bargain with the Union. Instead, it argues that the Board abused its discretion in determining which ballots to count in the election. Schoolman's arguments border on being frivolous.

First, the Board did not abuse its discretion in sustaining the objection to Roger Kai's ballot. The Stipulated Election Agreement stated that only "full time and regular part time" employees were to be included in the unit. Stipulated Election Agreement, *reprinted in* J.A. 3. Kai had not worked at Schoolman for the seven months

before the election, and had only worked a total of nine days in the year before the election. In excluding Roger Kai as a "casual" employee, the Board construed the agreement consistent with its longstanding policy to exclude casual employees unless they are specifically included. *See, e.g., Delta Gas, Inc.*, 283 N.L.R.B. 391, 397, 1987 WL 89553 (1987); *Mariposa Press*, 273 N.L.R.B. 528, 530 n. 12 (1984). In so doing, it did not abuse its discretion.

Schoolman counters that company officials *meant* to include casual employees in the agreement, and that the Board abused its discretion by failing to grant a hearing on this question. This argument is based on the absurd suggestion that a party to an agreement may enforce something other than what is written if it had something else in mind, even when there is no meaningful extrinsic evidence supporting the alleged contrary intention. Schoolman's contention fails upon recitation, for it is so obviously misguided. There is no case authority of which we are aware, either in administrative law or in general contract law, that supports this bizarre claim.

Second, we reject Schoolman's argument that, because Kai was excluded, other employees that Schoolman now alleges were "casual" should also have been excluded. It is well established that a party must challenge voter eligibility prior to the actual casting of ballots. *See NLRB v. A.J. Tower Co.*, 329 U.S. 324, 331–33, 67 S.Ct. 324, 328–29, 91 L.Ed. 322 (1946). This is true even if the voter would have been ineligible if a timely challenge had been made. *See id.* at 331, 67 S.Ct. at 328 ("The fact that cutting off the right to challenge conceivably may result in the counting of some ineligible votes is thought to be far outweighed by the dangers attendant upon the allowance of indiscriminate challenges after the election."). If Schoolman had wanted to object to other allegedly casual employees, it should have made these objections before the election.[1]

---

1. Under Board procedure, a party is permitted to make multiple objections, but then withdraw selected ones. As a result, a party effectively has the right to file contingent objections. This option was open to Schoolman in the present case; nonetheless, Schoolman failed to file such objections.

Having determined that the Board did not abuse its discretion in excluding Kai, we need not address the status of Daniel Mullen. Because the vote was 20 to 18 in favor of the Union, and because the Board did not abuse its discretion in excluding Kai, Mullen's status is immaterial because his vote could not have affected the outcome. In addition, for the reasons stated above, we reject Schoolman's argument that all dispatchers should have been excluded because Mullen was excluded; if Schoolman had wanted to object to other dispatchers, it should have done so before the election. *See A.J. Tower,* 329 U.S. at 331–33, 67 S.Ct. at 328–29.

### III. CONCLUSION

Accordingly, we deny Schoolman's petition for review and grant the Board's cross-application for enforcement.